IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CRIMINAL NO. 04-30139-WDS |
| | ) |
| GERALD HOWLIET, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion to suppress evidence (Doc. 444), to which the government has filed a response (Doc. 465). The Court held evidentiary hearings on the motion and took the matter under advisement.

The defendant has asserted that the search warrant dated July 23, 2003, for the search of the residence at 2347 Carol, Cahokia, Illinois was based on an affidavit that contained hearsay from two confidential sources, was suspect in nature, and should not have been allowed to form the basis of the search warrant. In response, the government asserts that the search warrant was based on probable cause, as found by Magistrate Judge Cohn, and therefore the seizure of evidence was proper and it should not be suppressed.

The Court has reviewed the search warrant application and the affidavit in support of the warrant. The affidavit provides that CS#1, identified as a reliable source, stated that Charles Howliet, Jr. obtained his cocaine from Gerald Howliet, and that CS#1 has purchased one ounce of crack cocaine from Charles Howliet, Jr. CS#2 was described as a reliable source of

1

information (the affidavit stated that this source had previously provided information that led to an arrest and the seizure of cocaine and currency). The affidavit provides that CS#2 knew Gerald Howliet to be a large-scale trafficker in cocaine. On July 16, 2003, CS#2 later purchased one ounce of crack cocaine from Charles Howliet Jr. while Charles Howliet, Jr. was driving defendant's car. CS#2 ordered a one-eighth kilo of crack cocaine from Charles Howliet, Jr. who told CS#2 it would take some time to deliver. Charles Howliet, Jr. was then observed traveling to 2347 Carol, pull into the driveway, leave and drive to 1916A Exchange Ave, then leave to deliver the crack cocaine to CS#2. Charles Howliet Jr. indicated that some of the crack had just been prepared, and a check of the cocaine revealed that it appeared newly cooked. The agents believed that Charles Howliet Jr. did not have enough crack, and that he went to 2347 Carol to get powder, then to 1916A Exchange to cook the powder into crack for CS#2.

## EVIDENCE ADDUCED AT THE HEARINGS

The defendant presented the testimony of several witnesses with respect to his motion. Detective Larry Fox, St. Louis County Police Department, testified that during the time in question he was a member of the Drug Enforcement Administration Task Force in the Southern District of Illinois. Det. Fox testified that he signed the affidavit in support of the application for a search warrant on the trailer located at 2347 Carol, Cahokia, Illinois. The search warrant application relied upon information provided, in part, by two confidential sources who had made purchases in other investigations, and were considered reliable by Det. Fox.[1] Fox testified that at least one of the CS's had previously purchased controlled substances from the defendant's cousin, Charles Howliet, Jr. but had not purchased directly from the defendant. On July 24,

---

[1] The identities of the confidential sources were not revealed at the hearing.

2003, there was a controlled buy made from Charles Howliet, Jr. by CS#2 at 2347 Carol. Det. Fox observed Charles Howliet, Jr.'s car arrive at that address after CS #2 had contacted Howliet. Det. Fox testified that he had seen Charles Howliet, Jr. driving that vehicle on prior occasions. Det. Fox further stated that before obtaining the warrant they had information that the house at 2347 Carol was actually owned by the defendant's mother, but that defendant was believed to be living at that address.

DEA Special Agent Michael Rehg testified that he was involved with the investigation involving the defendant and that on July 25, 2003, along with S/A Kenny Williams, he questioned the defendant. During the questioning, S/A Rehg said to the defendant that he could, "Make this easy" or "make this hard," speaking of the search of the residence. S/A Rehg advised the defendant that they had a search warrant for his residence, but if he would cooperate, they would take him back to the residence and let him open the door with his key, rather than have the agents have to use force to enter the residence. The defendant would not agree to accompany them, and was kept at the East. St. Louis Police Department until they could conduct the search. The defendant was later released.

S/A Rehg further testified that on July 25, the date the search warrant was executed, he had asked the United States Marshal's office to "grab" the defendant if they saw him and tell him they had a search warrant for his residence. There was a county warrant outstanding for the defendant, and S/A Rehg wanted to talk to the defendant about the search warrant. He indicated that for the safety of the officers executing the warrant, he did not want the defendant to be at his home during the execution of the warrant. A copy of the search warrant and the receipt for the warrant was left at 2347 Carol after the execution of the warrant.

The defendant called Jerry Simmons, an officer with the East St. Louis Police Department, who testified that he followed the defendant's vehicle, after being asked by the United States Marshals Service to watch for the defendant's car.  He, accompanied by his supervisor, Detective Sgt. Eiland, stopped the defendant's car and brought him to the East St. Louis Police Department.

Subsequent to the hearings, and directly related to the matters revealed at the hearings, the defendant filed his motion to dismiss (Doc. 493).  The government has now filed its response to the motion.  In light of the fact that this motion is, essentially, part of the motion to suppress, the Court **FINDS** that the motion acted in the nature of further briefing on the motion to suppress.  Therefore, the time between the filing of the motion to dismiss and the government's response tolls the Speedy Trial clock.

## ANALYSIS

**1.     The Sufficiency of the Search Warrant**.

A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) (*citing Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Where information from an informant is used to establish probable cause, the informant's credibility is assessed on the following: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

*United States v. Koerth*, 312 F.3d 862, 866 (7th Cir.2002); *United States v. Jones*, 208 F.3d 603, 609 (7th Cir.2000).

There is a presumption as to the validity of the affidavit supporting the search warrant which must be overcome by a defendant seeking to suppress evidence seized pursuant to the warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The defendant has not overcome that presumption. The Court notes that the defendant has essentially challenged the reliability of the confidential sources without specifically seeking a *Franks* hearing. The Court **FINDS** that there is nothing in the record, nor was there anything presented at the hearing, which would establish the need for the Court to make a *Franks* inquiry or to have held a *Franks* hearing.[2] The defendant has not made a sufficient showing to entitle him to challenge the validity of the affidavit, or the information and credibility of the two confidential informants. The Court **FURTHER FINDS** that the search warrant was based upon probable cause as determined by the magistrate, and that the warrant was based on sufficient evidence that allowed a "reasonably prudent person" to believe that the search would reveal evidence of a crime, which it did. *Peck*, 317 F.3d at 755-56. Therefore, the Court **DENIES** defendant's motion to suppress on all grounds asserted.

**2        The Defendant's Motion to Dismiss Based on Illegal Arrest**

The defendant also seeks to dismiss the charges filed on the grounds that the defendant was subjected to an illegal arrest on July 25, 2003, because the arrest was not based upon

---

[2]A defendant is entitled to a *Franks* hearing if he makes a preliminary showing that an affiant knowingly, or with reckless disregard for the truth, made a false statement that was necessary for the determination of probable cause. *Franks*, 438 U.S. at 155-56; *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir.2003); *United States v. Maro*, 272 F.3d 817, 821 (7th Cir.2001). This rule applies equally to omissions that could reasonably affect the issuing judge's determination of probable cause. *See, e.g., United States v. Swanson*, 210 F.3d 788, 790-91 (7th Cir.2000).

probable cause (Doc. 493). In the motion the defendant also seeks to have suppressed all information obtained by the police following his arrest, and any items seized and any evidence obtained.

It is well settled that even "an illegal arrest without more can never be the basis for the dismissal of an indictment." *United States v. Coleman*, 146 F.3d 674, 676 n.1 (7th Cir. 1998) (*quoting New York v. Harris*, 495 U.S. 14, 18 (1990)). Here, the Court is not persuaded that the defendant was illegally detained. Initially, the Court notes that the record reveals that there was an outstanding county arrest warrant for the defendant. That fact alone, would be sufficient to allow the defendant's detention and arrest.

However, even if there were not a warrant for the defendant's arrest already in place, the Supreme Court has repeatedly held that it is proper to detain an individual during the execution of a search warrant at his residence for such requirements as officer safety. In *Muehler v. Mena*, 125 S. Ct. 1465, 1469-70 (2005) the Court held that "An officer's authority to detain incident to a search is categorical: it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Id.* at 1470, (*quoting Michigan v. Summers*, 452 U.S. 692, 705 n.19 (1981)). In *Summers* the Court held that officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." 452 U.S. 705. The Court noted that minimizing the risk of harm to officers is a substantial justification for detaining an occupant during a search, *id.*, at 702-03.   Because a warrant existed to search the premises and defendant was an occupant of the premises at the time of the search, his detention for the duration of the search was reasonable under *Summers*. "Inherent in *Summers*' authorization to detain is the authority to

use reasonable force to effectuate the detention." 125 S. Ct. at 1470.  In *Summers* the Court identified three law enforcement interests that would justify limited detention of the occupants of the premises during execution of a valid search warrant: "preventing flight in the event that incriminating evidence is found," "minimizing the risk of harm" to the officers and to the occupants of the place to be searched, and the "orderly completion of the search." 452 U.S., at 702-703.

      Here, even if there were no outstanding warrant for the defendant's arrest, the defendant was believed by law enforcement to be actively engaged in drug possession and distribution and to be part of a large scaled distribution organization.  The defendant had refused to cooperate and allow the officers to search his residence, which was certainly his right, but he then knew that a search was imminent.  In light of the nature of this offense and the significant need for officers to attempt to ensure safety during the execution of the warrant, and the orderly completion of the search, the Court **FINDS** that  the limited detention of the defendant at the East St. Louis police station was reasonable under the circumstances.  Accordingly, the Court **DENIES** defendant's motion to dismiss the indictment.

      In conclusion, the Court **DENIES** defendant's motion to suppress evidence and **DENIES** defendant's motion to dismiss the indictment on all grounds raised in each motion.

      **IT IS SO ORDERED.**

      **DATED: April 4, 2006.**


                                         **s/ WILLIAM D. STIEHL**
                                             **DISTRICT JUDGE**